Argued December 20, 1976, reversed February 28, 1977

ALDAHL et al, *Respondents—Cross-Appellants,*
*v.*
CITY OF CORVALLIS, *Appellant—Cross-Respondent.*
(No. 30557, CA 6572)
560 P2d 678

Scott A. Fewell, Corvallis, argued the cause and filed the briefs for appellant—cross-respondent.

Joseph P. Morray, Corvallis, argued the cause for

[ 683 ]

respondents—cross-appellants. With him on the brief was Colley and Morray, Corvallis.

Before Schwab, Chief Judge, and Lee and Tanzer, Judges.

LEE, J.

**LEE, J.**

Defendant City of Corvallis appeals from a summary judgment entered by the circuit court declaring "invalid and of no effect" an ordinance creating a local improvement district.

In July of 1975 the owner of seven different lots abutting a portion of Willamette Avenue within the city of Corvallis filed a petition with city officials requesting the creation of an improvement district in order to facilitate the paving of that street.[1] Subsequent to the filing of that petition the city engineering staff conducted a study of the area and ultimately recommended to the city council that it initiate an improvement—i.e., paving project—encompassing both Willamette Avenue and Roth Street, a second unimproved street located at one end of and running perpendicular to Willamette Avenue. The inclusion of Roth Street was deemed necessary by the engineering staff because of the drainage problem that would be created by having a paved Willamette Avenue feeding into an unimproved Roth Street, and because, in the absence of an improved Roth Street, access to Willamette Avenue would be limited to a single route, through a residential development, over some substandard streets.

■ On July 21, 1975 the city council adopted a resolution declaring its intent to institute the recommended street improvement project and to finance that improvement by the creation of an improvement district comprised of all property abutting either Willamette Avenue or Roth Street. Owners of land within the proposed district were thereafter informed of the scheduling of a public hearing at which all "objections or remonstrances" to the project would be considered

---

[1] *See generally* ORS 223.387 through 223.485.

by the council.[2] Initially convened on August 18, 1975, the public hearing on the matter was concluded on September 2, 1975, at which time the council determined that those remonstrating were the owners of less than two-thirds of the property measured by area within the district proposed and proceeded to adopt Ordinance 75-52, creating "Paving District 597, Willamette and Roth Street Extension."[3]

Plaintiffs, owners of property abutting Roth Street, thereafter filed a complaint for declaratory judgment in the circuit court, contending that in adopting Ordinance 75-52 the council had proceeded in violation

[2] Corvallis City Ordinance 71-13, relating to local improvements, provides in Section 5 that:

"Within five days after the engineering report [on a proposed improvement district] and map have been filed, the City Recorder shall make provision for at least 10 days['] notice of a public hearing to the owners of property within the proposed district in which the local improvement is contemplated * * *. The notice shall specify the time and place where the Council will hear and consider objections or remonstrances to the proposed local improvement by any parties aggrieved thereby. * * * The notice shall give a description of the proposed local improvement in general terms, the estimated probable cost of the proposed improvement, a description of the boundaries of the district specifically benefited by the proposed local improvement and proposed to be assessed therefor and shall notify all interested persons to present their written remonstrances and objections, if any, to the office of the City Recorder hereafter described. The notice shall notify interested persons that objections and remonstrances, if any, together with the map and engineering report will be considered by the City Council at the time and place stated in the notice.

"The City Council shall hold the public hearing and consider the objections and remonstrances, if any, and consider the map and engineering report at the time and place specified in the notice. In the case of a street or alley improvement, if the owners of two-thirds of the property measured by area within the local improvement district object or remonstrate against the proposed improvement, they shall defeat and prevent the local improvement and no further action shall be taken for six months."

[3] The owners of some 72 percent of the property within the proposed district had initially filed remonstrances with the council prior to the August 18, 1975 hearing; owners of 24 percent of the benefited property withdrew their remonstrances prior to the conclusion of the hearing on September 2, 1975. On appeal plaintiffs contend that once remonstrances representing more than two-thirds of the property within the district had been filed the council had been deprived of jurisdiction to proceed further, and that any subsequent withdrawal of those remonstrances was of no

of Section 46 of the city's charter which provides in pertinent part that:

> "Street, sewer, sidewalk, and such other public improvements as the council deems necessary may be undertaken on the motion of the council or on petition of the owners of two-thirds of the property to benefit specially from the improvements. *A remonstrance of the owners of two-thirds of the benefited property to be specifically affected by a street improvement shall defeat a motion or petition to improve such street, in which event no further action to effect the improvement shall be taken for six months * * *.*" (Emphasis supplied.)

Acknowledging that the council had the authority to include within the boundaries of the proposed street improvement district two different streets where their improvement is reasonably interrelated,[4] plaintiffs contend that Section 46 nonetheless requires that remonstrances to a proposed project be calculated on a street-by-street basis rather than on the basis of the total property within the entire improvement district. Thus, although those remonstrating against the creating of Paving District 597 were the owners of only 48 percent of the property within the whole district, because those remonstrators owned over 90 percent of the property abutting Roth Street, the council was, plaintiffs contend, obligated by the terms of Section 46 to sever Roth Street from the proposed improvement district and to forego any improvement of Roth Street for at least six months.

---

consequence. Section 5 of Ordinance 71-13 (*see* note 2) specifically provides, however, that the council will hold a public hearing to "hear and consider objections or remonstrances to the proposed local improvement by any parties aggrieved thereby." The ordinance clearly contemplates that remonstrances will be considered and weighed by the council at the hearing itself prior to the taking of a vote on the proposed project; a property owner would, therefore, be entitled to appear at the hearing and to submit a remonstrance at that time. Similarly, a property owner might, as occurred in this case, withdraw a previously filed remonstrance at any time up to the close of the public hearing. *See generally* Annotation, 27 ALR2d 604 (1953).

[4] *See* ORS 223.389; *Raz et ux v. City of Portland et al,* 203 Or 285, 280 P2d 394 (1955); *Lawrence v. City of Portland,* 85 Or 586, 167 P 587 (1917).

In granting plaintiffs the declaratory relief requested the circuit court "found and held" as follows:

"The City of Corvallis is empowered by its own Charter to define and set boundaries of improvement districts. The boundaries may include the whole, or part of a single street, or it may include the whole, or parts, of several streets so long as the improvement constitutes a single improvement scheme. Normally this would require that the streets, in whole or part, are contiguous, are to be improved in the same basic manner, etc.
"* * * * *

"If [however] the City initiates the procedures necessary to create a street improvement district and it includes more than one street, in whole or in part, within the boundaries of one district, [Section 46 of the charter requires that] it must afford to the benefited property owners the right to remonstrate against such separate whole, or part, of a street. After holding a public hearing on the remonstrances, the City may indeed proceed to create an improvement district encompassing one, or more, separate streets, in whole, or in part, if they have some commonality and have survived the remonstrance."

While the interpretation accorded Section 46 by plaintiffs and accepted by the court below is arguably a tenable one, we believe that it represents an inappropriately narrow construction of the less than concisely drafted provision and was, therefore, erroneous.

Prior to its amendment in 1954 Section 46 of the charter provided that:

" 'Street, sewer, sidewalk and such other public improvements as the council deems necessary may be undertaken on the motion of the council or on petition of the owners of two-thirds of the property to benefit specially from the improvements. *A remonstrance of the owners of two-thirds of the benefited property to be specifically affected by such an improvement* shall defeat such a motion or petition, in which event no further action to effect the improvement shall be taken for six months * * *.' " (Emphasis supplied.)

As so framed the section indicated more clearly than

the present version that for the purpose of calculating remonstrances any given improvement project—be it a street, sewer, sidewalk or "other necessary" project— was to be considered as a single entity. In any given instance the city would, therefore, be authorized to proceed with the project envisioned in its entirety unless owners of two-thirds of the property within the entire district beneficially affected by the project were to make their objections known.

■ The phrases "street improvement" and "to improve such street" were incorporated into Section 46 in 1954 as the result of an amendment designed, as disclosed by the "ballot title" which accompanied that amendment, to eliminate " 'remonstrance[s] against sewer and sidewalk improvements [while permitting] remonstrance[s] against street improvements.' " Apparently the sole intended effect of the amendment was the elimination of the right of remonstrance where the improvement initiated by the city was other than a street improvement; there is no indication that the amendment was also intended to alter in any way the method by which remonstrances were to be calculated where a "street improvement" involving either one or several different streets was proposed. The implication is that under the amended version of Section 46, as under its predecessor, the owners of two-thirds of the property within the entire district must remonstrate in order to block a proposed street improvement project.

Plaintiffs have acknowledged that the council has the authority to determine the boundaries of any local improvement district, including a district created for the purpose of financing a street improvement district, and that where the improvement contemplated is a "street improvement" the district defined may include either a single street or a portion thereof, or the whole or part of many different streets reasonably related in some way to an overall improvement scheme. In many, if not all, instances in which the proposed district includes more than one street, the project to be

undertaken may only be feasible if it can be completed in its entirety as planned; in the case at hand for example, the city engineering staff determined that the paving of Willamette Avenue would not be practicable, due to potential drainage and traffic problems, unless Roth Street were to be improved at the same time. In light of the acknowledged authority of the city to define the scope of a needed "street improvement" and to determine the boundaries of the district specifically benefited by the improvement to be undertaken, it would seem to us to be incongruous to read Section 46 of the charter in such a way as to permit the owners of but two-thirds of the property abutting even a minor segment of a rationally planned unitary improvement to effectively block that project contrary to the wishes of the owners of the majority of the land within the entire district.[5]

For these reasons we believe the interpretation placed upon Section 46 by the circuit court was erroneous and that it ought to be read as requiring the computation of remonstrances on a district-wide rather than street-by-street basis. At the time Ordinance 75-52 was passed the remonstrances before the council represented the objections of owners of less than two-thirds of the property within the district; accordingly, there was no bar to its valid adoption.

Reversed.

---

[5] Section 5 of the Corvallis City Charter provides that all provisions of the charter "shall be liberally construed to the end that the city may have all powers necessary or convenient for the conduct of its municipal affairs * * *."